## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Joshua Brent McClary, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07cv1080 (LO/TCB) |
| | ) | |
| Nurse Fowlkes, et al., | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Joshua Brent McClary, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, against defendants Nurse Fowlkes, Dr. Clarke, Captain Davis, Lieutenant Merritt, and Captain Best, who are all staff members at Deep Meadows Correctional Center ("DMCC") in State Farm, Virginia. On January 29, 2008, defendant Clarke filed a Motion for Summary Judgment, a memorandum in support of that Motion, and Notice pursuant to Local Civil Rule 7(K). On February 19, 2008, defendants Davis, Merritt, and Best filed a Motion for Summary Judgment, a brief in support of that Motion, and Notice pursuant to Local Civil Rule 7(K). Then, on May 5, 2008, defendant Fowlkes filed a Motion for Summary Judgment, a brief in support of that Motion, and Notice pursuant to Local Civil Rule 7(K). Plaintiff was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he has filed a response to each Motion as well as a Motion for the Appointment of Counsel and a Motion to Amend Evidence. For the following reasons, defendants' Motions for Summary Judgment will be granted, plaintiff's Motion to Amend Evidence will be granted, and plaintiff's Motion for the Appointment of Counsel will be denied as moot.

## I. Background

In August of 2007, plaintiff was incarcerated at DMCC in State Farm, Virginia. He alleges that on August 11, 2007, while waiting in line at the dining hall, he suffered a pseudoseizure,[1] which caused him to "black out" and hit his head. It is undisputed that prison officials called for medical assistance immediately after plaintiff fell and that defendants Fowlkes, Merritt, Davis, and Best responded. Amend. Compl. 5; Davis Aff. ¶ 4; Best Aff. ¶ 4; Merritt Aff. ¶ 4; Fowlkes Aff. ¶ 3-5. It is also undisputed that plaintiff was transported to the medical department where he was examined. Id. After the examination, Nurse Fowlkes determined that plaintiff faked the seizure. Compl. 5; Davis Aff. ¶ 5; Best Aff. ¶ 5; Merritt Aff. ¶ 5; Fowlkes Aff. ¶ 10. As a result, plaintiff was placed in the special housing unit ("SHU") and charged with "delay and hindering." Compl. 5; Fowlkes Aff. ¶ 13-14. While in the SHU, plaintiff claims that he requested, but never received, emergency medical attention over a period of three days because his head was swollen, he was experiencing headaches, and he was having difficulty writing with his left hand.[2] Compl. 6.

On August 24, 2007, plaintiff was examined by Dr. Clarke. Compl. 6; Clarke Aff. ¶ 4. During this examination, plaintiff told Clarke that stress caused his seizures and explained that he was upset on August 11, the date of the seizure, when someone took his watermelon. Clarke Aff. ¶ 5. According to plaintiff, Dr. Clarke stated that what caused the incident in the kitchen was a

---

[1] Plaintiff claims, and defendants do not dispute, that plaintiff was diagnosed with pseudoseizures at the University of Virginia Medical Center in September of 2001. It is also undisputed that plaintiff notified staff members at DMCC of his pseudoseizures when he was admitted into the facility on June 5, 2007. A pseudoseizure is a "nonepileptic seizure" that can have either "a physiologic or a psychogenic basis." Pl. Exh. H.

[2] The Court notes that in plaintiff's Exhibit B, which is his pseudoseizure diagnosis, the attending physician noted that plaintiff was a "right-handed, white male." Thus, any problem plaintiff may have experienced in writing with his left hand would appear to be inconsequential.

"temper tantrum" and not a "seizure." Compl. 6. Clarke advised plaintiff that the type of seizures he was describing were called "pseudoseizures" because they are not a medical condition, but a mental health condition. Clarke Aff. ¶ 6. Clarke further advised plaintiff that he needed to find a way to better handle his stress and that if he felt stressed or threatened in the future, he should report to the medical department or security officials. Clarke Aff. ¶ 7. Plaintiff does not dispute any part of Clarke's affidavit. Instead, his response to Clarke's Motion for Summary Judgment and Affidavit consists of some medical records showing that he was diagnosed with pseudoseizures in 2001. Notably, this examination on August 24 was the only interaction plaintiff had with defendant Clarke.

Based on the events that occurred on August 11 and August 24, as well as plaintiff's interactions with the defendants, plaintiff claims that defendants Fowlkes and Clarke were deliberately indifferent to his serious medical needs. He further claims that defendants Davis, Merritt, and Best violated his constitutional rights when they arbitrarily punished him by charging him with "delay and hindering." Plaintiff seeks monetary damages in the amount of $5,000,000.00.

## II. Standard of Review

In reviewing defendants' Motions for Summary Judgment, the Court must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where there is "no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is properly made and supported . . . [by affidavits], an opposing party may not rely merely

3

on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

### III. Motion to Amend Evidence

On May 21, 2008, plaintiff filed a Motion to Amend Evidence.  Through this Motion, plaintiff seeks to add to the record a one-page sheet of information prepared by the Epilepsy Foundation that describes "nonepileptic seizures."  Plaintiff refers to this information as "Exhibit H."  Plaintiff states that he wants to include this additional information in order to "open the courts [sic] eyes to better understand the plaintiff's serious medical condition" and to "help further the plaintiff's claim of [d]eliberate [i]ndifference."   Because the information and Motion plaintiff submitted are in response to defendants' Motions for Summary Judgment, plaintiff's Motion will be granted to the extent that the Court will consider Exhibit H in ruling on defendants' Motions for Summary Judgment.

### IV. Analysis

#### A. Inadequate Medical Care

Prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if such care is constitutionally inadequate. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  However, to establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105; see also Staples v. Va. Dep't of Corr., 904 F.

4

Supp. 487, 492 (E.D. Va. 1995). Under this standard, a prisoner must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that serious medical need.

For this second prong, an assertion of mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). Further, "[a] complaint that a physician has been negligent in diagnosing . . . a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 106 (1976). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851. However, the prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).

Plaintiff has failed to meet his burden on summary judgment of establishing any genuine issue of material fact for trial. First, plaintiff fails to allege facts sufficient to demonstrate that his "pseudoseizures" constitute a serious medical need. A prisoner, such as plaintiff, meets his burden of presenting a serious medical need by alleging facts sufficient to show that his need has been

5

diagnosed by a physician as mandating treatment and is "so obvious" that even a lay person would easily recognize the need for a doctor's attention, or is one where the denial or delay in treatment causes the inmate to suffer a "life-long handicap or loss." Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D.Va. 1995). Despite the fact that plaintiff was diagnosed with pseudoseizures, nothing in the record suggests that any physician has determined that plaintiff's condition mandates treatment. As both defendants Clarke and Fowlkes note, plaintiff takes no medication for his condition, nor has he ever been prescribed medication for his condition. Fowlkes Aff. ¶ 6; Clarke Aff. ¶ 5. Plaintiff's own Exhibit H suggests that the appropriate treatment for psychogenic[3] nonepileptic seizures is a "positive empathetic approach" and "early diagnosis and referral ... to [a] psychotherapist."[4] Further, plaintiff makes no showing that any delay or denial of treatment for his pseudoseizures would cause him to suffer a "life-long handicap or loss." Moreover, plaintiff's Exhibit H suggests that it is difficult for even physicians to diagnose pseudoseizures. Thus, such a condition would be far from obvious to a lay person. Accordingly, plaintiff fails to present facts sufficient to demonstrate that his pseudoseizures constitute a serious medical need.

---

[3] In some of plaintiff's responses to defendants' Motions for summary judgment, he appears to claim that his nonepileptic seizures are physiologic and not psychogenic. However, plaintiff's Exhibit B suggests that he was diagnosed with psychogenic nonepileptic seizures because he was diagnosed by the psychiatry department and the only treatment suggested was "continued psychiatric care." Further, plaintiff's Exhibit H explains that psychogenic nonepileptic seizures "result from stressful psychological conflicts or major emotional trauma." Moreover, in a statement plaintiff obtained from a prison psychologist by the name of Ms. Coe, Coe states that upon arriving at DMCC, plaintiff reported that he experienced pseudoseizures under very stressful conditions. Blackwell Encl. A. Plaintiff does not dispute that he told defendant Clarke that when his seizure occurred, he was upset because someone took away his watermelon. Thus, the record suggests that plaintiff's pseudoseizures are, in fact, psychological, as Clarke and Fowlkes claim, and not physical.

[4] Additionally, while plaintiff may have notified DMCC of his pseudoseizure diagnosis, plaintiff makes no showing that he requested treatment for his condition at any time.

Even if plaintiff could establish that his pseudoseizures constituted a serious medical need, he fails to allege sufficient facts to demonstrate that either defendant Fowlkes or Clarke was deliberately indifferent to that need. First, plaintiff acknowledges that Fowlkes immediately reported to the kitchen where he was experiencing his pseudoseizure and transported him to the medical department where she examined him. Plaintiff's complaint against Fowlkes focuses on the facts that Fowlkes did not agree with plaintiff's explanation of his medical condition, did not treat his seizure or the swelling on his head, and "ignored his [] requests for treatment of [his] migraine headaches" for three days. Amend. Compl. 6. Although plaintiff may disagree with the diagnosis or treatment he received, such disagreement over the proper course of medical treatment does not state a claim for which relief can be granted in this § 1983 proceeding. Russell v. Sheffer, 528 F.2d 318, 318 (4th Cir. 1975). Additionally, in Fowlkes' affidavit, she clearly articulates the steps she took to determine the cause of plaintiff's seizing episode and any treatment that may be needed. See Fowlkes Aff. After administering ammonia sticks, checking plaintiff's vital signs, reviewing plaintiff's medical history, and talking to plaintiff, Fowlkes determined that there was no physiological basis for plaintiff's seizures. Fowlkes Aff. ¶ 7-10. Given the immediate and continuing medical attention Fowlkes provided to plaintiff, plaintiff cannot allege facts sufficient to show that Fowlkes was deliberately indifferent. Moreover, plaintiff fails to demonstrate deliberate indifference because he presents no facts to suggest that Fowlkes' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851.

Plaintiff also fails to establish that defendant Clarke showed deliberate indifference to his

medical needs. Clarke met with plaintiff on only one occasion.[5] Plaintiff's sole complaint based on that meeting was that Clarke "refused" to recognize plaintiff's pseudoseizures as a "serious medical condition" and that she believed that plaintiff had a temper tantrum and not a seizure on August 11. Neither Clarke's refusal to recognize pseudoseizures as a serious medical condition nor her assessment of the cause of the August 11 incident constitutes anything close to deliberate indifference. Instead, Clarke contends, and plaintiff does not dispute, that she tried to explain to plaintiff that the cause of his psudoseizures was mental health issues, such as stress, and advised plaintiff to find better ways to handle his stress. Clarke Aff. ¶ 5-7. At most, plaintiff disagrees with Clarke's diagnosis. However, such disagreement does not state a claim for which relief can be granted in this § 1983 proceeding. Russell v. Sheffer, 528 F.2d 318, 318 (4th Cir. 1975). Additionally, plaintiff presents no facts to suggest that Clarke's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851.

Plaintiff has failed to present affidavits or other evidentiary material sufficient to meet his burden on summary judgment that he suffered from a "serious" medical need, such as a condition for which lack of treatment perpetuates severe pain. Because plaintiff has failed to do so, defendants Clarke and Fowlkes are entitled to judgment as matter of law on this claim, and summary judgment will be granted in their favor. Moreover, even if plaintiff had demonstrated a serious medical need, these defendants' Motions would be granted because plaintiff fails to present facts sufficient to demonstrate that either of these defendants was deliberately indifferent to plaintiff's medical needs.

---

[5] Notably, plaintiff made no request for additional medical visits with Clarke.

8

B. Arbitrary Punishment

Plaintiff's sole claim against defendants Davis, Merritt, and Best is that he was subjected to arbitrary punishment when he was charged with "delay and hindering" following Nurse Fowlkes' assessment that plaintiff had fabricated his seizure.[6] This charge caused plaintiff to lose 30 days of the good time credit he had accrued.

It is a well-established principle that prisoners have a right to be free from arbitrary punishment by prison officials. See Howard v. Smyth, 365 F.2d 428, 430-31 (4th Cir. 1966); see also Superintendent, Mass. Corr. Inst. v. Hill, et al., 472 U.S. 445, 455 (1985). When a loss of statutory good-time credits or solitary confinement is at issue, the Supreme Court has mandated procedural safeguards for prison disciplinary hearings, including advance written notice of charges, written findings, and an opportunity, when consistent with institutional safety and correctional goals, for the inmate to call witnesses and present evidence in his defense. Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). However, prison inmates have no protected liberty interest in the disciplinary hearing "procedures themselves, only in the subject matter to which they are directed." Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993). Moreover, a decision by a prison disciplinary board satisfies due process if there is some evidence in the record to support the board's decision.

---

[6] To the extent that plaintiff claims that he was falsely accused, he fails to state a § 1983 claim because "[t]he prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). Rather, "the prisoner's due process rights are protected if he is granted a hearing on the charges and given an opportunity to rebut them." Jones v. Coughlin, 45 F.3d 677, 679 (2d Cir. 1995); see Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984). In this case, plaintiff was served with a copy of the Disciplinary Offense Report and he accepted a penalty offer. Blackwell Aff. ¶ 9. He was informed that by accepting the penalty offer, he was pleading guilty to the offense, accepting the penalty indicated, and waiving his right to a disciplinary hearing where he could have presented witnesses or evidence on his behalf. Id. Thus, plaintiff's due process rights were protected and he makes no claim to the contrary.

9

Superintendent v. Hill, 472 U.S. 445, 454 (1985).

Plaintiff fails to state a claim that he was subjected to arbitrary punishment because he has not presented facts sufficient to demonstrate that he was denied any of the procedural safeguards mandated for prison disciplinary hearings. Specifically, the record indicates, and plaintiff does not dispute, that he was served with a copy of the Disciplinary Offense Report and he accepted a penalty offer on August 12, 2007. Blackwell Aff. ¶ 9-10. He was informed that by accepting the penalty offer, he was pleading guilty to the offense, accepting the penalty indicated, and waiving his right to a disciplinary hearing where he could have presented witnesses[7] or other evidence on his behalf. Id. at ¶ 9. Based on plaintiff's acceptance of the penalty offer, a hearing officer found him guilty of "delay and hindering" on August 15, 2007. Id. at ¶ 11. Because plaintiff was provided with notice and an opportunity to have a hearing, he was not subjected to arbitrary punishment by defendants Davis, Merritt, or Best. Additionally, these defendants correctly point out that they played no part in concluding that plaintiff had fabricated his seizure, which formed the basis for the "delay and hindering" charge. Davis Aff. ¶ 7; Best Aff. ¶ 7; Merritt Aff. ¶ 7. Because plaintiff fails to meet his burden on summary judgment that he was denied the mandated procedural safeguards for his disciplinary hearing, defendants Davis, Best, and Merritt are entitled to judgment as matter of law on this claim, and summary judgment will be granted in their favor.

---

[7] Despite plaintiff's acceptance of the penalty offer, he was still permitted to make written requests to obtain witness statements. Based on plaintiff's requests, prison officials obtained statements on his behalf from a psychologist by the name of Ms. Coe and an "LPN" by the name of Ms. Boyd. Ms. Coe stated that upon his arrival at DMCC, plaintiff reported to her that he "sometimes experienced 'pseudoseizures' under very stressful conditions." Ms. Boyd's statement indicated that plaintiff's prison records document that plaintiff has pseudoseizures but takes no medication for the condition. Blackwell Encl. A.

## IV. Appointment of Counsel

Plaintiff has submitted a Motion for the Appointment of Counsel. Although courts have the statutory authority to appoint counsel for plaintiffs proceeding in forma pauperis, the Fourth Circuit has cautioned that this power should be limited to "exceptional circumstances," such as cases with particularly complex factual and legal issues or with a litigant who is unable to represent himself adequately. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). To date, plaintiff has ably filed his pleadings and replied to the Court's various orders, as well as demonstrated comprehension of the procedures and laws of this Court and the Fourth Circuit. Thus, plaintiff has made no showing of exceptional circumstances. Additionally, because judgment will be granted in favor of defendants, plaintiff's Motion for the Appointment of Counsel will be denied as moot.

## V. Conclusion

For the above reasons, plaintiff's Motion to Amend will be granted, defendants' Motions for Summary Judgment will be granted, and plaintiff's Motion for the Appointment of Counsel will be denied. An appropriate Order and judgment shall issue.

Entered this 27th day of August 2008.

/s/
Liam O'Grady
United States District Judge

Alexandria, Virginia

11